## WILLIAM O. LITTLEFIELD *vs.* ELVIRA A. HUBBARD.

## York. Opinion April 16, 1921.

*Construction of language in a deed. Right of way. Easement. Dedication of right of way to the use of the public, and adjoining lot owners. Evidence not sufficient upon which to predicate the existence of a way by dedication.*

This is an action of trespass brought by the plaintiff against the defendant for certain acts of trespass alleged to have been committed by the defendant on a strip of land 16 feet wide and about 54 feet long, located at Kennebunk Beach, so-called, on Lord's Point.

The declaration contains two counts. However, it is unnecessary to refer to them further than to say that the first is for building a concrete walk across the above described premises and the second for driving automobiles over and leaving them standing on the land described.

The plea is the general issue, and special matter as justifications under the general issue: 1. That the right of way in question had been dedicated to the use of the public and adjoining lot owners by the plaintiff's predecessors in title. 2. That the defendant as one of the adjoining lot owners had a legal right of entering upon the land for the purpose of improving it and that she built the concrete walk complained of for the purpose of benefiting and improving the right of way and did not injure the way or damage the plaintiff.

*Held:*

1. That whatever the defendant's right of passage over the way, if any, she had no right to build a concrete walk or otherwise disturb the soil upon the fee of the plaintiff.

2. That there is not sufficient evidence in the present case upon which to predicate the existence of a way by dedication.

On report. This is an action of trespass brought by the plaintiff against defendant resulting from certain acts of trespass alleged to have been committed by defendant on a strip of land sixteen feet wide and about fifty-four feet long, located at Kennebunk Beach, on Lord's Point, alleged to be owned by plaintiff. Defendant filed a plea of the general issue, and also a brief statement of special matter of defense, setting up that a predecessor in title had dedicated to the adjoining lot owners and to the public the land in question as a right

of way or road.    After the completion of the introduction of evidence, the case was reported to the Law Court, to render such decision as the case required, and to assess damages if that question was reached. Judgment for the plaintiff for damages in the sum of one dollar.

Case is stated in the opinion.

*Willard & Ford,* for plaintiff.

*Emery, Waterhouse & Paquin, and Mathews & Stevens,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

SPEAR, J.   This is an action of trespass brought by the plaintiff against the defendant for certain acts of trespass alleged to have been committed by the defendant on a strip of land 16 feet wide and about 54 feet long, located at Kennebunk Beach, so-called, on Lord's Point bounded and described as follows, to wit:

"A Certain lot or parcel of land situated in Kennebunk at Kennebunk Beach on Lord's Point, so-called, and being a strip or lot of land sixteen feet wide extending from the Southerly side of the lot of Sewall Hubbard and being a road sixteen feet wide running from said lot about fifty four (54) feet to Lord's Point Road, subject, however, to any rights of way heretofore reserved to C. S. Hubbard for purposes of passing, teaming teams and access to his lot.   Meaning hereby to convey the same land over which a right of way was conveyed to Benjamin Watson of Kennebunk, by the Grantor by its deed dated January 30th, 1900."

The declaration contains two counts.   However, it is unnecessary to refer to them further than to say that the first is for building a concrete walk across the above described premises and the second, for driving automobiles over and leaving them standing on the land described.

The plea is the general issue, and special matter as justifications under the general issue:   1.   That the right of way in question had been dedicated to the use of the public and adjoining lot owners by the plaintiff's predecessors in title.   2.   That the defendant as one of the adjoining lot owners had a legal right of entering upon the land for the purpose of improving it and that she built the concrete walk complained of for the purpose of benefiting and improving the right of way and did not injure the way or damage the plaintiff.

The accompanying sketch will be referred to in the opinion, by the lots, numbers, letters, names and dates contained thereon.

The general issue raises the question of the plaintiff's title. There is no controversy that the plaintiff's deed, Exhibit 6, covered FKLD, the whole right of way, but the defendant contends that Exhibit 4, conveyed to C. Sewall Hubbard on June 5, 1901, Lot No. 3, bounded by DBE. If so bounded, then practically all of the concrete walk marked 1 and 2 would be upon the fee of Hubbard and not upon that of Littlefield. The plaintiff, however, claims that Lot No. 3 should be bounded on the east by line FG instead of the line DE which would exclude from the conveyance, DFGE and still leave the fee of the right of way in the plaintiff.

Accordingly, it is first necessary to determine whether the northerly line of Lot No. 3 begins at D or F. There is no controversy that the lines AC and CD are the eastern boundaries of Lots Nos. 1 and 2.

Lot No. 3 is bounded as follows: "Commencing at the S. E. corner of said Hubbards Fish House Lots, said Lots being conveyed to him by said Grantors Dec. 2nd, 1895, being on the West side of the 'Right of Way' from B. Watson's Fish House, said 'Right of Way'

running Southerly to the road leading to 'Lord's Point'. This first line being the same as the south side line of the said Hubbard's Lots 401 feet to an eye bolt in a ledge in the Cove, thence back to the said 'Right of Way,' about 400 feet, to a point 15 feet from the place of beginning and South of it, thence 15 feet to the place begun at, containing about 3600 feet, more or less, mostly flats land."

It appears from the deeds that a right of way was reserved to Lot No. 1 over the east end of Lot No. 2 and thence along the 'Right of Way' to Lord's Point Road, so that both of these lots had an easement over the 'Right of Way.' The language of the description in giving the starting point of Lot No. 3 is somewhat confused, yet in view of the circumstances that the grantors had already twice reserved the 'Right of Way' to the occupants directly above it, their own grantees; that they are now about to convey a lot which, if it was not excluded, would take in a part of the 'Right of Way' over which they had granted easements; that this was the first deed in front of the 'Right of Way,' and keeping in mind that there was a south east corner of the Fish House Lots at the west side of the 'Right of Way,' as well as at the east side; that the words "Fish House Lots," may be construed as merely descriptive of the adjacent ownership; we are of the opinion that the language, omitting the intervening words of reference, was intended to read as follows:

"Commencing at the S. E. corner of said Hubbard's Fish House Lots on the west side of the 'right of way,'" that is, not the S. E. corner of the Fish House Lots, which would be at D, but at the S. E. corner, on the west side of the 'right of way,' which would be at F. The language of the deed is fully as susceptible of the latter as of the former construction. It is claimed, however, that the northern line of this lot as described does not correspond in distance with the line FB. The description is as follows:

"This first line being the same as the south side line of the said Hubbard's Lots 401 feet to an eyebolt." This is not inconsistent with the exclusion of the 'Right of Way' as the 401 foot line was evidently descriptive of the "first line," that is, it was to run coincident with the 401 foot line of Hubbard's land. The description of the line from the eye bolt back, however, strongly confirms the above interpretation; 'thence back *to* said right of way.'" The word "to" is significant. It is "a word of exclusion, unless by necessary implication it is manifestly used in a different sense." *Bradley* v.

*Rice et als.*, 13 Maine, 198. In *State* v. *Bushey*, 84 Maine, 460. That "to," in its common use, is a word of exclusion, is understood as well by the layman as by the lawyer.

We have little doubt that it was the intention of the grantors to exclude the 'Right of Way' and the language of the deed easily bears a construction that will accomplish that purpose. Moreover, it was reasonable and what might be expected, that the grantors should exclude from this deed, the land upon which they had already granted two easements.

If the above construction of the deed, conveying Lot No. 3 is correct, it excludes that part of the 'Right of Way' east of the line FG, and vested in Littlefield, the fee thereof, subject to the easements reserved therein. It is not denied that the concrete walk is mostly built upon this part of the 'Right of Way.' Whatever the defendant's right of passage over the way, if any, she had no right to build a concrete walk or otherwise disturb the soil upon the fee of the plaintiff. *Burr* v. *Stevens*, 90 Maine, 500.

But the defendant in her specifications under the general issue, claims the defense of dedication. But we find no occasion to discuss this question. Whatever future evidence may show, there is not sufficient evidence in the present case upon which to predicate the existence of a way by dedication.

> *Judgment for the plaintiff for damages in the sum of one dollar.*